**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

MARLON VINCENT ADAMS,

       Petitioner,

   v.

GARY SWARTHOUT,

       Respondent.

Case No. 1:10-cv-01290-AWI-SKO-HC

FINDINGS AND RECOMMENDATIONS
TO DENY THE PETITION FOR WRIT
OF HABEAS CORPUS (DOC. 1),
ENTER JUDGMENT FOR RESPONDENT,
AND DECLINE TO ISSUE
A CERTIFICATE OF APPEAL

**OBJECTIONS DEADLINE: 30 DAYS**

    Petitioner is a state prisoner proceeding pro se and in forma pauperis with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rules 302 through 304. Pending before the Court is the petition, which was filed on July 9, 2010, and transferred to this Court on July 20, 2010.  Respondent filed an answer with supporting documentation on April 13, 2011, and Petitioner filed a traverse on August 22, 2011, and November 1, 2012.

1

I.   <u>Jurisdiction</u>

Because the petition was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the AEDPA applies in this proceeding.  <u>Lindh v. Murphy</u>, 521 U.S. 320, 327 (1997); <u>Furman v. Wood</u>, 190 F.3d 1002, 1004 (9th Cir. 1999).

A district court may entertain a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court only on the ground that the custody is in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. §§ 2254(a), 2241(c)(3); <u>Williams v. Taylor</u>, 529 U.S. 362, 375 n.7 (2000); <u>Wilson v. Corcoran</u>, 562 U.S. -, 131 S.Ct. 13, 16 (2010) (per curiam).  Petitioner claims that in the course of the proceedings resulting in his conviction, he suffered violations of his constitutional rights.  The challenged judgment was rendered by the Superior Court of the State of California, County of Kern (KCSC), which is located within the territorial jurisdiction of this Court. 28 U.S.C. §§ 84(b), 2254(a), 2241(a), (d).

Respondent filed an answer on behalf of Respondent Gary Swarthout, Warden of the California State Prison at Solano, California (SOL), where Petitioner has been incarcerated during the course of this proceeding.  Petitioner has thus named as a respondent a person who has custody of the Petitioner within the meaning of 28 U.S.C. § 2242 and Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts (Habeas Rules).  <u>See</u>, <u>Stanley v. California Supreme Court</u>, 21 F.3d 359, 360 (9th Cir. 1994).

///

2

1   Accordingly, this Court has jurisdiction over the subject

2   matter of this action and over the person of Respondent Swarthout.

3       II.   Procedural Summary

4       At a jury trial in the KCSC, Petitioner was found guilty of

5   having inflicted corporal injury upon the mother of his child in

6   violation of Cal. Pen. Code § 273.5(a) and having personally

7   inflicted great bodily injury under circumstances involving domestic

8   violence in the commission of the corporal injury in violation of

9   Cal. Pen. Code § 12022.7(e).  The trial court found that Petitioner

10  had suffered a prior serious and violent felony conviction for first

11  degree robbery in violation of Cal. Pen. Code §§ 667(a) through (i)

12  and 1170.12 (a) through (e) and had served a prior prison term

13  within the meaning of Cal. Pen. Code § 667.5(b).  Petitioner was

14  sentenced to nineteen years in prison.  (Ans., Ex. A, doc. 21-1, 3.)

15      Petitioner appealed the judgment, which was affirmed by the

16  Court of Appeal of the State of California, Fifth Appellate District

17  (CCA) on January 28, 2009.  (Ans., Ex. A, doc. 21-1.)

18      On April 15, 2009, the California Supreme Court (CSC) summarily

19  denied Petitioner's petition for review without a statement of

20  reasoning or authority.  (Ans., Ex. B, doc. 21-2.)

21      III.  Factual Summary

22      In a habeas proceeding brought by a person in custody pursuant

23  to a judgment of a state court, a determination of a factual issue

24  made by a state court shall be presumed to be correct; the

25  petitioner has the burden of producing clear and convincing evidence

26  to rebut the presumption of correctness.  28 U.S.C. § 2254(e)(1);

27  Sanders v. Lamarque, 357 F.3d 943, 947-48 (9th Cir. 2004).  This

28  presumption applies to a statement of facts drawn from a state

3

appellate court's decision.  <u>Moses v. Payne</u>, 555 F.3d 742, 746 n.1 (9th Cir. 2009).  The following statement of facts is taken from the unpublished opinion of the CCA in <u>People v. Marlon Vincent Adams</u>, case number F054378, filed on January 28, 2009:

### FACTS

The victim testified that she had been in a relationship with defendant since 1998 and they had a seven-year-old son together. They lived separately for a while, but on October 15, 2006, defendant moved back in with the victim. The next day, the victim went to work, and then she and their son went to the store to get food for dinner. She was expecting defendant and his friend that evening for a barbeque dinner and a movie. She had told defendant that she wanted no alcohol at the barbeque, but defendant brought vodka with him and he was already intoxicated when he and his friend arrived.

The victim told defendant not to bring the vodka in, but he ignored her. They started arguing and she told him to leave their son alone. The victim screamed at defendant to get out of their son's room and she told defendant to leave. As they argued, defendant pulled the victim's hair and grabbed her face. She pushed away from him and walked away toward the back door. As she did, defendant pushed her from behind, causing her to fall. When she fell, her finger got caught in the doorway and the tip of it was severed. She found the tip and went to the hospital, but the tip could not be reattached.

An investigator spoke to defendant in jail. Defendant was very remorseful and started crying. He told the investigator he got angry that day because the victim was "mouthing off in front of his friend." Defendant pulled the victim's ponytail. As she walked toward the kitchen, defendant pushed her and her finger got caught in the door. Defendant told the investigator he was sorry for what had happened and he wanted to keep his family together.

(Ans., Ex. A, doc. 21-1, 3-4.)

IV.   <u>Standard of Decision and Scope of Review</u>

Title 28 U.S.C. § 2254 provides in pertinent part:

4

> (d) An application for a writ of habeas corpus on
> behalf of a person in custody pursuant to the
> judgment of a State court shall not be granted
> with respect to any claim that was adjudicated
> on the merits in State court proceedings unless
> the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to,
> or involved an unreasonable application of, clearly
> established Federal law, as determined by the
> Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light
> of the evidence presented in the State court
> proceeding.

Clearly established federal law refers to the holdings, as opposed to the dicta, of the decisions of the Supreme Court as of the time of the relevant state court decision. Cullen v. Pinholster, - U.S. -, 131 S.Ct. 1388, 1399 (2011); Lockyer v. Andrade, 538 U.S. 63, 71 (2003); Williams v. Taylor, 529 U.S. 362, 412 (2000). A state court's decision contravenes clearly established Supreme Court precedent if it reaches a legal conclusion opposite to, or substantially different from, the Supreme Court's or concludes differently on a materially indistinguishable set of facts. Williams v. Taylor, 529 U.S. at 405-06. The state court need not have cited Supreme Court precedent or have been aware of it, "so long as neither the reasoning nor the result of the state-court decision contradicts [it]." Early v. Packer, 537 U.S. 3, 8 (2002).

A state court unreasonably applies clearly established federal law if it either 1) correctly identifies the governing rule but applies it to a new set of facts in an objectively unreasonable manner, or 2) extends or fails to extend a clearly established legal

5

principle to a new context in an objectively unreasonable manner.
Hernandez v. Small, 282 F.3d 1132, 1142 (9th Cir. 2002); see,
Williams, 529 U.S. at 407.

An application of clearly established federal law is
unreasonable only if it is objectively unreasonable; an incorrect or
inaccurate application is not necessarily unreasonable.  Williams,
529 U.S. at 410.  A state court's determination that a claim lacks
merit precludes federal habeas relief as long as it is possible that
fairminded jurists could disagree on the correctness of the state
court's decision.  Harrington v. Richter, 562 U.S. -, 131 S.Ct. 770,
786 (2011).  Even a strong case for relief does not render the state
court's conclusions unreasonable.  Id.  To obtain federal habeas
relief, a state prisoner must show that the state court's ruling on
a claim was "so lacking in justification that there was an error
well understood and comprehended in existing law beyond any
possibility for fairminded disagreement."  Id. at 786-87.  The
standards set by § 2254(d) are "highly deferential standard[s] for
evaluating state-court rulings" which require that state court
decisions be given the benefit of the doubt, and the Petitioner bear
the burden of proof.  Cullen v. Pinholster, 131 S.Ct. at 1398.
Habeas relief is not appropriate unless each ground supporting the
state court decision is examined and found to be unreasonable under
the AEDPA.  Wetzel v. Lambert, --U.S.--, 132 S.Ct. 1195, 1199
(2012).

In assessing under section 2254(d)(1) whether the state court's
legal conclusion was contrary to or an unreasonable application of
federal law, "review... is limited to the record that was before the
state court that adjudicated the claim on the merits."  Cullen v.

<u>Pinholster</u>, 131 S.Ct. at 1398. Evidence introduced in federal court has no bearing on review pursuant to § 2254(d)(1).  <u>Id.</u> at 1400.

Further, 28 U.S.C. § 2254(e)(1) provides that in a habeas proceeding brought by a person in custody pursuant to a judgment of a state court, a determination of a factual issue made by a state court shall be presumed to be correct; the petitioner has the burden of producing clear and convincing evidence to rebut the presumption of correctness.  A state court decision on the merits based on a factual determination will not be overturned on factual grounds unless it was objectively unreasonable in light of the evidence presented in the state proceedings.  <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003).  A state has adjudicated a claim on the merits within the meaning of § 2254(d) when it decides the petitioner's right to relief on the basis of the substance of the constitutional claim raised, rather than denying the claim because of a procedural or other rule precluding state court review of the merits.  <u>Lambert v. Blodgett</u>, 393 F.3d 943, 969 (9th Cir. 2004).

Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim are presumed to rest upon the same ground.  <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803 (1991).  Thus, where the California Supreme Court denies a habeas petition without citation or comment, a district court will "look through" the unexplained decision of that state court to the last reasoned decision of a lower court as the relevant state-court determination.  <u>Ylst v. Nunnemaker,</u> 501 U.S. at 803-04; <u>Taylor v. Maddox</u>, 366 F.3d 992, 998 n.5 (9th Cir. 2004).  A petitioner has the burden to overcome or

rebut the presumption by strong evidence that the presumption, as applied, is wrong.  <u>Ylst</u>, 501 U.S. at 804.

This Court will look through the unexplained decision of the CSC to the decision of the CCA, which was the last reasoned decision addressing Petitioner's claims.

## V.   Admission of Prior Acts of Domestic Violence

Petitioner argues that the admission of prior acts of domestic violence for the jury to consider to show a propensity to commit the charged offense, and thus to consider in the determination of guilt, was an abuse of discretion and violated his right to a fundamentally fair trial guaranteed by the Due Process Clause of the Fourteenth Amendment.

### A.   The State Court Decision

The pertinent portion of the decision of the CCA is as follows:

**DISCUSSION**

**I. Evidence of Prior Domestic Violence**

Defendant contends the admission of evidence of his prior domestic violence was an abuse of discretion because the evidence was unduly prejudicial under Evidence Code section 352. He explains that the evidence likely misled jurors to conclude the victim's finger injury was the result of yet another episode of domestic violence rather than an accident. He asserts that the evidence of the prior acts was more inflammatory than the charged offense and that evidence of his prior use of a knife might have led some jurors to speculate that he intentionally cut off the victim's fingertip with a knife. He also argues the evidence of prior domestic violence essentially required two mini-trials with two witnesses, thereby confusing the issues by focusing the jurors on collateral issues rather than the charged offense. Lastly, defendant contends the evidence violated his constitutional right to due process.

8

### A. Prior Acts

The prosecution presented evidence that defendant had committed two prior acts of domestic violence, one against the victim and one against another woman, X., with whom he had a brief, intimate relationship.

In 2002, defendant and X. were arguing because X. asked defendant to leave her home. Defendant became verbally abusive, then threw a spice rack at X. as she stood at the stove. He knocked a cup of coffee from her hand, chased her as she ran to the bathroom, and then forced his way into the bathroom. He squeezed her head hard with both his hands. When responding police knocked on the door, X. ran from defendant.

In 2005, the victim contacted a deputy and told him she was being abused and needed help getting defendant to leave her house. The victim and the deputy went to the house, but defendant was gone. When defendant returned, the victim told him she had contacted the deputy and defendant was not supposed to be there. Defendant produced a knife, cut off the top of the Christmas tree and waived the knife at the victim. He grabbed her by the arms, causing bruising, and pushed her onto the couch. He was angry she had contacted the deputy. He called her a snitch and a whore. He told her that if she called law enforcement again, he would make her life miserable and she would have to move out of the state. Defendant later acknowledged to the deputy that he and the victim had argued and he had pushed the victim away because she was trying to strike him. He said he had showed her the knife. He said he told her not to contact law enforcement because he wanted to reconcile with her and keep their family together.

### B. Evidence Code Section 352

Evidence Code section 1109 is an exception to the rule prohibiting evidence of prior acts to demonstrate that the defendant has a propensity to commit those acts. " 'The propensity inference is particularly appropriate in the area of domestic violence because on-going violence and abuse is the norm in domestic violence cases. Not only is there a great likelihood that any one battering episode is part of a larger scheme of dominance and control, that scheme usually escalates in frequency and severity.

9

Without the propensity inference, the escalating nature of domestic violence is likewise masked. If we fail to address the very essence of domestic violence, we will continue to see cases where perpetrators of this violence will beat their intimate partners, even kill them, and go on to beat or kill the next intimate partner. Since criminal prosecution is one of the few factors which may interrupt the escalating pattern of domestic violence, we must be willing to look at that pattern during the criminal prosecution, or we will miss the opportunity to address this problem at all.' [Citation.]" (*People v. Hoover* (2000) 77 Cal.App.4th 1020, 1027-1028.)

Admission of such evidence remains subject to a section 352 analysis, which permits the trial court, in its discretion, to exclude evidence if its probative value is substantially outweighed by the probability that its admission will necessitate undue consumption of time or create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury. (Evid.Code, § 352.) "The prejudice which exclusion of evidence under Evidence Code section 352 is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence." (*People v. Karis* (1988) 46 Cal.3d 612, 638; *People v. Yu* (1983) 143 Cal.App.3d 358, 377.) "Rather, the statute uses the word in its etymological sense of 'prejudging' a person or cause on the basis of extraneous factors. [Citation.]" (*People v. Farmer* (1989) 47 Cal.3d 888, 912, overruled on other grounds in *People v. Waidla* (2000) 22 Cal.4th 690, 724, fn. 6.) The trial court's exercise of discretion under section 352 will not be disturbed on appeal unless the court clearly abused its discretion, that is, unless the prejudicial effect of the evidence clearly outweighed its probative value. (*People v. Lucas* (1995) 12 Cal.4th 415, 449.)

We see no abuse here. The probative value of defendant's prior act of violence against the victim was compelling. The evidence was strongly indicative of, and tended logically to establish, defendant's propensity to commit physically and verbally abusive acts against her. (See *People v. Hoover, supra*, 77 Cal.App.4th at p. 1029 [similar conduct against the same victim is highly relevant]; *People v. Harris* (1998) 60 Cal.App.4th 727, 739-740 [other crimes evidence must tend to prove logically and by reasonable inference the issue upon which

10

it is offered, it must be offered on an issue material to the prosecution's case, and it must not be merely cumulative].) Furthermore, the evidence that defendant had committed similar acts against another woman with whom he was romantically involved tended to prove he had the propensity to treat his intimate partners in an aggressive manner.

Furthermore, the prejudicial factors in this case clearly did not outweigh the compelling probative value of the evidence. (*People v. Harris, supra*, 60 Cal.App.4th at pp. 737-741 [inflammatory nature of the evidence, probability of confusion, remoteness, and consumption of time are factors to be weighed against probative value of evidence].) The prior acts were not particularly more inflammatory or shocking than the charged act. The prior acts and the charged act all involved an argument that ensued after the women asked defendant to leave. In all cases, defendant became angry, aggressive and physically violent. The charged act, which resulted in a fingertip being severed, might be considered more gruesome or shocking than the prior acts. As for the knife, there was no evidence defendant intentionally cut off the victim's finger and it is pure speculation that the jurors might have considered that possibility in light of defendant's prior knife use. Finally, the testimony of two witnesses did not require an undue consumption of time, and there is nothing in the record to indicate that the evidence so distracted the jurors that they were unable to focus on the fact that the question before them was whether defendant committed the charged offense.

**C. Due Process**

Defendant claims the admission of evidence of his prior domestic violence violated his right to due process. The appellate courts have consistently rejected due process challenges to Evidence Code section 1109. (E.g., *People v. Cabrera* (2007) 152 Cal.App.4th 695, 704; *People v. Price* (2004) 120 Cal.App.4th 224, 240; *People v. Escobar* (2000) 82 Cal.App.4th 1085, 1095-1096; *People v. James* (2000) 81 Cal.App.4th 1343, 1353; *People v. Jennings* (2000) 81 Cal.App.4th 1301, 1310-1313; *People v. Brown* (2000) 77 Cal.App.4th 1324, 1335; *People v. Hoover, supra*, 77 Cal.App.4th at pp. 1027-1028; *People v. Johnson* (2000) 77 Cal.App.4th 410, 417-420.) These cases relied on *People v. Falsetta* (1999) 21 Cal.4th 903, in which the Supreme Court

11

> concluded that a similar statute, Evidence Code section 1108, does not violate due process because the trial court's discretion to exclude evidence under Evidence Code section 352 provides a procedural safeguard against prejudice. For the reasons explained in these cases, we reject appellant's due process challenge to the statute.

(Doc. 21-1, 4-8.)

B. Analysis

Petitioner argues that the state court abused its discretion under Cal. Evid. Code §§ 1109 and 352 which permit the introduction of evidence of character in the form of prior acts of domestic violence to prove conduct on a specified occasion. Petitioner's claim is not cognizable in this proceeding.

Federal habeas relief is available to state prisoners only to correct violations of the United States Constitution, federal laws, or treaties of the United States. 28 U.S.C. § 2254(a). Federal habeas relief is not available to retry a state issue that does not rise to the level of a federal constitutional violation. Wilson v. Corcoran, 562 U.S. —, 131 S.Ct. 13, 16 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Alleged errors in the application of state law are not cognizable in federal habeas corpus. Souch v. Schaivo, 289 F.3d 616, 623 (9th Cir. 2002). The Court accepts a state court's interpretation of state law. Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1996). In a habeas corpus proceeding, this Court is bound by the California Supreme Court's interpretation of California law unless it is determined that the interpretation is

12

untenable or a veiled attempt to avoid review of federal questions. Murtishaw v. Woodford, 255 F.3d 926, 964 (9th Cir. 2001).

Here, there is no indication that the state court's interpretation of state law was untenable or part of an attempt to avoid review of federal questions. Thus, even if incorrect, the state court ruling cannot serve as a basis for federal habeas relief unless federal constitutional rights are affected. Tinsley v. Borg, 895 F.2d 520, 530 (9th Cir. 1990), cert. denied, 498 U.S. 1091, 111 S.Ct. 974 (1991); Jammal v. Van de Kamp, 926 F.2d 918, 919-20 (9th Cir. 1991).

The Supreme Court has not yet clearly ruled that the admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of a writ of habeas corpus. Estelle v. McGuire, 502 U.S. at 75 n.5 (declining to opine regarding whether a state law would violate the Due Process Clause if it permitted use of prior crimes evidence to show propensity to commit a charged crime). Absent such clearly established federal law, it cannot be concluded that a state court's evidentiary ruling was contrary to, or an unreasonable application of, Supreme Court precedent under 28 U.SC. § 2254(d)()1). Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009) (citing Carey v. Musladin, 549 U.S. 70, 77 (2006)); Larson v. Palmateer, 515 F.3d 1057, 1066 (9th Cir. 2008), cert. den., Larson v. Belleque, 555 U.S. 871 (2008) (denying a due process claim concerning the admission of prior crimes evidence because the Supreme Court had expressly reserved decision on the question of whether propensity evidence could ever violate due process, and thus the state court did not unreasonably apply clearly established federal law in determining that prior crimes

13

evidence did not violate due process); <u>Alberni v. McDaniel</u>, 458 F.3d 860, 866-67 (9th Cir. 2006), <u>cert. den.,</u> - U.S. -, 127 S.Ct. 1834 (2007) (denying a due process claim concerning the admission of past violent actions as propensity evidence in a second degree murder case for want of a "clearly established" rule from the Supreme Court); <u>Mejia v. Garcia</u>, 534 F.3d 1036, 1046 (9th Cir. 2008), <u>cert. den.,</u> 555 U.S. 1117 (2009) (finding no unreasonable application of clearly established Supreme Court precedent regarding either propensity evidence or general due process principles where in a case of rape, kidnapping, and assault against the Petitioner's other family members, the state court admitted evidence that the defendant had committed uncharged sexual assaults of his daughter).

Petitioner asserts that decisions of the Supreme Court determine that due process is violated when evidence of other crimes resulting in a conviction is used without a limiting instruction that the evidence cannot be considered as evidence of guilt on the charged offense.  However, Petitioner's case citations do not support his position.

In <u>Spencer v. Texas</u>, 385 U.S. 554 (1967) the Court held it was not a violation of due process for a state to enforce its habitual criminal statutes by alleging prior convictions in the indictment, introducing proof of past convictions, and instructing the jury not to consider the priors in assessing guilt or innocence under the current indictment -- even where there was some possibility of collateral prejudice to the defendant.  In <u>Estelle v. McGuire</u>, 502 U.S. 62 (1991), the Court held that no due process violation occurred where the state court admitted evidence of prior injuries

to a child in a trial of a father accused of killing the child.  The state court instructed the jury that the prior injury evidence could be considered for the limited purposes of determining if it tended to show a clear connection between the other two offenses and charged crime so that it might logically be concluded that if the defendant committed the prior offenses, he also committed the charged offense.  The Court reasoned that the evidence was probative of the intent element of second degree murder and was not reasonably interpreted as propensity evidence in light of the instructions. However, as previously noted, the Court expressly reserved decision on the issue of whether a state law would violate the Due Process Clause if it permitted prior crimes evidence to show propensity to commit a charged crime.  Estelle, 502 U.S. at 75 n.5.

Petitioner cites McKinney v. Rees, 993 F.2d 1378 (9th Cir. 1993).  However, the McKinney case did not address evidence of other, similar acts of domestic violence as in the present case, but rather evidence that the defendant possessed knives several months before the murder; was proud of his knife collection; and occasionally strapped a knife to his body and used a knife to scratch the words "Death is His" on the door to his closet.  The charged murder was committed with a knife, but no murder weapon was ever identified.  The court held that the knife evidence was not relevant to any element of the prosecution's case, and the extensive questioning regarding this character evidence rendered the trial fundamentally unfair.

In contrast, the present case involved evidence of acts of violence that were very similar to the conduct constituting the charged offense.  The evidence was particularly probative of intent

in light of the factual issue concerning whether the Petitioner's

actions in causing the victim to fall were purposeful or accidental.

The evidence was relevant, and given the strong evidence of

Petitioner's guilt, it could reasonably be concluded that the

evidence did not have an adverse effect or influence in the jury's

verdict.  Thus, the present case may be distinguished from McKinney

based on both the relevance of the evidence and the reduced

possibility of prejudice.  Cf., Correll v. Stewart, 137 F.3d 1404,

1416-17 (9th Cir. 1998).

     A state court's procedural or evidentiary ruling may be subject

to federal habeas review if it violates federal law, either by

infringing upon a specific federal constitutional or statutory

provision or by admitting evidence so arbitrary or prejudicial that

its admission rendered the trial fundamentally unfair and violated

fundamental conceptions of justice.  Perry v. New Hampshire,

- U.S.-, 132 S.Ct. 716, 723 (2012); Windham v. Merkle, 163 F.3d

1092, 1103 (9th Cir. 1998); Jammal v. Van de Kamp, 926 F.2d at 919-

20.  Here, as noted by the CCA, evidence of Petitioner's prior acts

of violence against the victim was relevant because it tended to

establish his propensity to commit abusive acts against the victim.

Further, it tended to rebut an inference of accident.  Likewise,

evidence of Petitioner's commission of similar acts against another

female partner tended to establish the Petitioner's propensity to

treat intimate partners aggressively.  The prior acts were

particularly probative because as conduct precipitated by arguments

arising after the Petitioner was asked to leave, they were similar

to the criminal acts charged in the present case.  Because the

charged offense involved the relatively gruesome circumstance of a

16

severed fingertip, the prior bad acts were not necessarily more shocking than the charged crime.  There was no indication that the witnesses who testified to the previous misconduct confused the jurors or consumed undue time.  The state court weighed appropriate factors to ensure that no undue prejudice would result from admission of the evidence.

Petitioner asserts that the victim characterized the charged offense as an accident.  However, the victim actually testified she was not sure whether the Petitioner pushed her or fell on her in his intoxicated state.  (LD 2, 6 RT 613.)  A social worker interviewed both Petitioner and the victim soon after the crime in connection with concern for violence in the presence of a child.  The social worker testified that both Petitioner and the victim informed her that Petitioner pulled the victim's hair and pushed her, which caused her finger to become stuck in the door.  (Id. at 630-31, 640.)  A law enforcement officer also testified that the victim reported that the Petitioner pulled her hair and tried to assault her; she ran from him and tried to escape out the back door, but he pushed her with both hands.  (Id. at 661-665.)  The victim's sister testified that while in the hospital after the attack, the victim told her that Petitioner had pushed her, and her finger had been caught in the door.  (Id., 7 RT 720-23.)  Thus, the jury was presented with multiple sources of evidence that strongly tended to show that the Petitioner had pushed the victim.

Petitioner complains that the prosecutor's argument emphasized that the jury could find by a preponderance of evidence that the prior domestic episodes did occur, and the prosecutor then argued that if Petitioner committed the prior offenses, Petitioner probably

17

committed the present offenses.  Although the prosecutor emphasized
that the burden of proof was only a preponderance with respect to
the sub-issue of whether Petitioner committed the prior domestic
violence, the prosecutor also reminded the jury that proof of the
commission of the charged offenses was beyond a reasonable doubt.
(Id. at 789-91, 794-95.)  Further, the jury was instructed on the
presumption of innocence and the burden of proof.  (Id. at 763-64.)
As to Petitioner's prior acts of domestic violence against the
victim and Mary Murphy, the jury was instructed that it could
consider the other acts of violence only if the People proved that
Petitioner in fact committed the uncharged domestic violence by a
preponderance of the evidence.  If the jury decided that Petitioner
committed the uncharged domestic violence, it might, but was not
required to, conclude from that evidence that Petitioner was
disposed or inclined to commit domestic violence and was thus likely
to commit and did commit the charged offense.  However, a finding
that Petitioner committed the uncharged domestic violence was not
sufficient by itself to prove guilt of the corporal injury charge or
any lesser included offense, and the People were still required to
prove each element of every charge beyond a reasonable doubt.
Further, the jury was not to consider the evidence for any other
purpose.  (Id. at 777-78.)  Thus, it does not appear likely that
there was a misunderstanding regarding the respective burdens of
proof.

     In sum, under the totality of the circumstances, the
introduction of the prior crimes evidence did not deprive Petitioner
of a fundamentally fair trial.  Thus, the state court's decision was
not contrary to, or an unreasonable application of, clearly

18

1 established federal law.  Accordingly, it will be recommended that

2 Petitioner's due process claim concerning the introduction of

3 evidence of prior conduct be denied.

4    VI.   Error in Instruction on Natural and Probable Consequences

5    Petitioner argues that his right to a fair trial was violated

6 by the trial court's instruction with CALCRIM 840 concerning the

7 concept of natural and probable consequences.  He contends the

8 instruction permitted the jury to convict him of committing spousal

9 battery in violation of Cal. Pen. Code § 273.5(a) by indirectly

10 inflicting corporal injury upon the victim, whereas state law

11 requires that the corporal injury result from the direct application

12 of force by the perpetrator upon the victim.

13    A.   The State Court's Decision

14    The decision of the CCA on this issue was as follows:

15 ***II. CALCRIM No. 840***

16 Defendant contends the trial court erred when it
instructed with CALCRIM No. 840 (Judicial Council of

17 Cal.Crim. Jury Instns. (2006-2007)) because the
instruction informed the jurors that defendant could be

18 liable for a traumatic condition that was merely the
natural and probable consequence of the injury, which he

19 maintains conflicts with the direct liability required of

20 section 273.5, subdivision (a).FN2

21
    FN2. Section 273.5, subdivision (a) provides:

22    "Any person who willfully inflicts upon a
   person who is his or her spouse, former spouse,

23    cohabitant, former cohabitant, or the mother or
   father of his or her child, corporal injury

24    resulting in a traumatic condition, is guilty

25    of a felony...."

26 In this case, however, there was overwhelming evidence
that defendant's application of physical force on the

27 victim directly, not just proximately, caused the victim's
finger injury (the "traumatic condition").FN3 (*People v.*

28 *Jackson* (2000) 77 Cal.App.4th 574, 580.) Indeed, defendant

19

himself admitted he pushed the victim and her finger got
caught in the door as she fell. There was no evidence
whatsoever that the victim's injury was proximately but
not directly caused by defendant's act.

> FN3. Our use of proximate cause terminology is
> partly for convenience, because the phrase
> "direct, natural and probable consequence" is
> often too unwieldy or grammatically difficult
> to utilize, and partly because case law
> generally uses proximate cause terminology.
> But, we recognize that "proximate" has long
> been disfavored as an arcane and misleading
> term of art, which is particularly troublesome
> when presented to a jury. (*Mitchell v. Gonzales*
> (1991) 54 Cal.3d 1041, 1050.) "Proximate" has
> been disapproved for use in both civil
> (*Mitchell v. Gonzales, supra*, at pp. 1050-1054)
> and criminal (*People v. Roberts* (1992) 2
> Cal.4th 271, 313) jury instructions.

Accordingly, under the facts of this case, we need not
determine whether the instruction was error. If it was,
any error was harmless because there is no reasonable
probability that a result more favorable to defendant
would have been reached had the court not instructed with
the challenged language. FN4 (*People v. Watson* (1956) 46
Cal.2d 818.)

> FN4. We note that CALCRIM No. 840 does contain
> language of both direct and proximate
> causation. (See *People v. Jackson, supra*, 77
> Cal.App.4th at p. 580; *People v. Rodriguez*
> (1999) 69 Cal.App.4th 341, 346-352.) In that
> regard, we believe the instruction is
> potentially confusing and might benefit from
> further examination by the instruction
> committee.

(Doc. 21-1, 8-9.)

B. <u>Analysis</u>

When a conviction is challenged in a proceeding pursuant to 28
U.S.C. § 2254 based on jury instruction error, two clearly

established legal principles govern a district court's review.

First, the United States Supreme Court has held that a challenge to a jury instruction based solely on an error under state law does not state a claim cognizable in federal habeas corpus proceedings.  Estelle v. McGuire, 502 U.S. at 71-72.  A claim that an instruction was deficient in comparison to a state model or that a trial judge incorrectly interpreted or applied state law governing jury instructions does not entitle one to relief under § 2254, which requires violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. §§ 2254(a), 2241(c)(3).

Secondly, the only basis for federal collateral relief for instructional error is that the infirm instruction or the lack of instruction by itself so infected the entire trial that the resulting conviction violates due process.  Estelle, 502 U.S. at 72; Cupp v. Naughten, 414 U.S. 141, 147 (1973); see, Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) (noting that it must be established not merely that the instruction is undesirable, erroneous or even "universally condemned," but that it violated some right guaranteed to the defendant by the Fourteenth Amendment).

The instruction may not be judged in artificial isolation; it must be considered in the context of the instructions as a whole and the trial record.  Estelle, 502 U.S. at 72.  In reviewing an ambiguous instruction, it must be determined whether there is a reasonable likelihood that the jury applied the challenged

21

instruction in a way that violates the Constitution.  Estelle, 502
U.S. at 72-73 (reaffirming the standard as stated in Boyde v.
California, 494 U.S. 370, 380 (1990)).  The Court in Estelle
emphasized that the Court had defined the category of infractions
that violate fundamental fairness very narrowly, and that beyond the
specific guarantees enumerated in the Bill of Rights, the Due
Process Clause has limited operation.  Id. at 72-73.

Moreover, even if there is instructional error, a petitioner is
generally not entitled to habeas relief unless the error is
prejudicial.  The Supreme Court has held that harmless error
analysis applies to instructional errors as long as the error at
issue does not categorically vitiate all the jury's findings.
Hedgpeth v. Pulido, 555 U.S. 57, 61 (2008) (citing Neder v. United
States, 527 U.S. 1, 11 (1999) (quoting in turn Sullivan v.
Louisiana, 508 U.S. 275 (1993) concerning erroneous reasonable doubt
instructions as constituting structural error)).

In Hedgpeth v. Pulido, the Court noted its previous decisions
that various forms of instructional error were trial errors subject
to harmless error analysis, including errors of omitting or
misstating an element of the offense or erroneously shifting the
burden of proof as to an element.  Hedgpeth, 555 U.S. 60-61.  To
determine whether a petitioner pursuant to § 2254 suffered prejudice
from such an instructional error, a federal court must determine
whether a petitioner suffered actual prejudice by assessing whether,

22

in light of the record as a whole, the error had a substantial and

injurious effect or influence in determining the jury's verdict.

Hedgpeth, 555 U.S. at 62; Brecht v. Abrahamson, 507 U.S. 619, 638

(1993).

Here, the jury was instructed pursuant to CALCRIM 840 as

follows:

> The defendant is charged in Count One with inflicting an
> injury on mother) (sic) of (his) child) that resulted in
> a traumatic condition in violation of Penal Code section
> 273.5(a).

> To prove that the defendant is guilty of this crime, the
> People must prove that:

> 1. The defendant willfully and unlawfully inflicted a
> physical injury on the (mother) of (his) child); AND

> 2.  The injury inflicted by the defendant resulted in a
> traumatic condition.

> Someone commits an act willfully when he or she does it
> willingly or on purpose.

> A traumatic condition is a wound or other bodily injury,
> whether minor or serious, caused by the direct application
> of physical force.

> A traumatic condition is the result of an injury if:

> 1. The traumatic condition was the natural and probable
> consequence of the injury;[1]

> 2. The injury was a direct and substantial factor in
> causing the condition;

> AND

---

[1]  The reporter's transcript reflects that the trial court here added "and"
between the first and second of the three prongs concerning whether a traumatic
condition was the result of an injury.  (LD 2, 7 RT 770:16.)

23

3. The condition would not have happened without the injury.

A natural and probable consequence is one that a reasonable person would know is likely to happen if nothing unusual intervenes. In deciding whether a consequence is natural and probable, consider all of the circumstances established by the evidence.

A substantial factor is more than a trivial or remote factor. However, it does not need to be the only factor that resulted in the traumatic condition.

(LD 1, 1 CT 180-81; LD 2, 7 RT 770.)

Thus, the jury instruction expressly required that for a traumatic condition to be the result of an injury, the condition must be the natural and probable consequence of the injury *and* a direct and substantial factor in causing the condition. Therefore, there was no reasonable likelihood that the jury applied the challenged instruction in a way that permitted it to find guilt even if the traumatic condition resulted only indirectly from the injury.

Even assuming the jury applied the instruction incorrectly, the state court's decision was not contrary to, or an unreasonable application of, clearly established federal law because the state court reasonably concluded the error was harmless. Multiple sources testified to Petitioner's admissions that he pushed the victim in a manner that caused her to fall into the door and sever her fingertip. There was no evidence to suggest that it was not reasonably likely that pushing the victim into the door or doorway would result in injury from forceful and unplanned contact with the

24

surrounding structure.  There was no evidence that any other force or actor intervened after Petitioner pushed the victim.

In sum, there was no evidence that Petitioner's act was not the direct cause of the victim's traumatic condition.  In light of the evidence in the case, the instruction did not render the trial fundamentally unfair.  The state court's conclusion that the instruction did not have a substantial and injurious effect or influence in determining the jury's verdict was objectively reasonable.

Thus, the state court's decision was not contrary to, or an unreasonable application of, clearly established federal law within the meaning of § 2254(d)(1).  Accordingly, it will be recommended that Petitioner's due process claim concerning CALCRIM 840 be denied.

VII.  <u>Error in Instruction on Great Bodily Injury</u>

Petitioner argues that the trial court violated his right to due process of law by failing to instruct the jury that Petitioner <u>personally</u> inflicted great bodily injury.

A.  <u>The State Court's Decision</u>

The pertinent portion of the CCA's decision on this issue is as follows:

***III. CALCRIM No. 3163***

Defendant contends the trial court erred by failing to
instruct the jury that defendant had to have personally
inflicted great bodily injury for the section 12022.7

25

enhancement to apply. The People concede the error but maintain that it was harmless because the jurors necessarily found he personally inflicted great bodily injury when it found defendant directly applied force to the victim resulting in a traumatic condition, an element of corporal injury. The People further state that the evidence that defendant personally inflicted the injury on the victim was overwhelming; indeed defendant admitted pushing her and causing her finger to get caught in the doorway.

The relevant enhancement under section 12022.7, subdivision (e) states:

> "Any person who personally inflicts great bodily injury under circumstances involving domestic violence in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three, four, or five years...."

The trial court instructed with CALCRIM No. 3163, which does not use the word "personally," although the authorities cited for the instruction include those for the requirement that the defendant must personally inflict the injury.

The trial court instructed as follows:

> "If you find the defendant guilty of the crime charged in Count 1, you must then decide whether the People have proved the additional allegation that the defendant inflicted great bodily injury on [the victim] during the commission of that crime under circumstances involving domestic violence.

> "Great bodily injury means significant or substantial physical injury. It is an injury that is greater than minor or moderate harm. Domestic violence means abuse committed against an adult who is a person with whom the defendant has had a child. Abuse means ... intentionally or recklessly causing or attempting to cause bodily injury, or placing another person in reasonable fear of imminent and serious bodily

26

injury to himself or herself or to someone else.

"The People have the burden of proving each allegation beyond a reasonable doubt. If the People have not met this burden, you must find that the allegation has not been proved."

The trial court has a sua sponte duty to instruct the jury on every element of an enhancement. (*Apprendi v. New Jersey* (2000) 530 U.S. 466, 490.) Failure to instruct on an element of an enhancement merits reversal unless such error is harmless beyond a reasonable doubt. (*People v. Sengpadychith* (2001) 26 Cal.4th 316, 327; *Chapman v. California* (1967) 386 U.S. 18, 24.) The failure to instruct on an element of an offense or an enhancement is harmless when we conclude "beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless." (*Neder v. United States* (1999) 527 U.S. 1, 17.)

Here, personal infliction was an element of the charged enhancement and therefore the trial court had a duty to instruct on it. The CALCRIM instruction, however, did not include the personal infliction requirement. "Commonly understood, the verb, 'to inflict,' means 'to lay (a blow) on: cause (something damaging or painful) to be endured: impose.' [Citations.] A blow is 'inflict[ed]' as long as it hits or strikes its target, or is administered or delivered thereto. [Citations.]" (*People v. Modiri* (2006) 39 Cal.4th 481, 493.) However, "[t]he term 'personally' ... refers to an act performed 'in person,' and involving 'the actual or immediate presence or action of the individual person himself (as opposed to a substitute, deputy, messenger, etc).' [Citation.] Such conduct is '[c]arried on or subsisting between individual persons directly.' [Citations.] Framed this way, the requisite force *must be one-to-one*, [though it] does not foreclose participation by others." (*Ibid.*, italics added.)

In this case, we therefore conclude the trial court erred, but we agree with the People that any error in the omission of the word "personally" was harmless beyond a reasonable doubt. "Personally," as used in the section 12022.7 enhancement, was intended "to limit the category of persons subject to the enhancement to those *who*

27

*directly perform the act that causes the physical injury*
*to the victim.*" (*People v. Cole* (1982) 31 Cal.3d 568, 579,
italics added.) FN5 Here, the evidence was uncontested and
overwhelming that it was defendant and no other person who
had direct physical contact with the victim and whose act
caused her injury. Defendant falls within the intended
category of persons subject to the enhancement. No other
person was directly or indirectly involved with causing
the victim's injury. There is no doubt the verdict would
have been the same had the jurors been instructed that
defendant must have personally inflicted the injury.

> FN5. The enactment of section 12022.7
> established that an aider and abettor who does
> not personally inflict the great bodily injury
> cannot be held liable for the enhanced penalty.
> (*People v. Cole, supra*, 31 Cal.3d at p. 578.)
> "Indeed, the legislative changes [that section
> 12022.7 embodies] express an intent to reject
> enhancement liability even in cases where the
> defendant directs the attack, or otherwise
> manifests the specific intent to cause the
> injury." (*Id.* at pp. 578-579.)

(Doc. 21-1, 9-12.)

    B.   Analysis

     Omission of an instruction on an element of an offense violates
the Sixth Amendment right to jury trial and due process, but it is a
trial error subject to harmless error analysis.  Neder v. United
States, 527 U.S. at 19.  Such an error is harmless unless it had a
substantial and injurious effect or influence in determining the
jury's verdict.  California v. Roy, 519 U.S. 2, 4-6 (1996) (remanding
for a determination of whether a failure to instruct the jury that
liability for aiding and abetting required an intent or purpose to
aid the confederate's crime was harmless); Brecht v. Abrahamson, 507
U.S. at 638.  Where a judge in a habeas proceeding is in grave doubt
as to the harmlessness of the error, the petitioner must prevail.
California v. Roy, 519 U.S. at 5.

28

1    Here, it was objectively reasonable for the state court to

2  conclude that the instructional error was harmless beyond a

3  reasonable doubt.  With respect to the issue of the identity of the

4  actor who pushed the victim, uncontroverted evidence established

5  that while Petitioner was in the presence of the victim, he pushed

6  the victim and caused her to fall and sever her fingertip.  There

7  was no evidence that any person or agent other than Petitioner

8  caused, or could have caused, the victim to fall and sever her

9  fingertip.  Under these circumstances, there is no question that the

10  omission of the element of personal infliction did not have a

11  substantial or injurious effect or influence on the jury's verdict.

12    Petitioner contends that because the jury took seven hours to

13  deliberate, requested re-reading of the testimony of the victim and

14  an emergency physician, and requested a definition of great bodily

15  injury, the omission of the instruction on personal infliction was

16  not harmless.  However, these questions logically point to jurors'

17  uncertainty or lack of decision on the issue of whether or not the

18  bodily injury suffered by the victim was "great" bodily injury, and

19  not the issue of the identity of the person causing the injury.

20  Accordingly, it will be recommended that Petitioner's claim

21  concerning the failure to instruct on personal infliction of great

22  bodily injury be denied.

23    VIII.  <u>Insufficiency of the Evidence of the Prior Robbery</u>

24           <u>Conviction</u>

25    Petitioner argues that the evidence that he suffered a prior

26  robbery conviction was insufficient because there was an error in

27  the California Law Enforcement Telecommunications System (CLETS) rap

28  sheet that was used to prove that Petitioner had sustained the prior

conviction.  Although the error did not concern the robbery conviction at issue, but rather a burglary conviction in 1997, Petitioner nevertheless contends that because there was one error in the rap sheet, the entire document was unreliable.

A.   The State Court's Decision

The pertinent part of the decision of the CCA is as follows:

**IV. Sufficiency of Evidence of Prior Conviction**

Defendant lastly contends the trial court erred by relying on a certified California Law Enforcement Telecommunications System (CLETS) FN6 rap sheet to support the finding that defendant suffered a prior conviction for robbery. He argues the rap sheet contains at least one significant error regarding another conviction and therefore the evidence was insufficient to prove the conviction.

> FN6. The CLETS system was established in 1965; the Legislature's purpose and intent in establishing the criminal recordkeeping system was codified in Government Code section 15151. According to that section, the CLETS system was established in order to provide "an efficient law enforcement communications network available to all [public agencies of law enforcement]. It is the intent of the Legislature that such a network be established and maintained in a condition adequate to the needs of law enforcement. It is the purpose of this chapter to establish a law enforcement telecommunications system for the State of California." (Gov.Code § 15151; *People v. Morris* (2008) 166 Cal.App.4th 363, 371, fn. 9.)

Defense counsel objected to the admission of the rap sheet, as follows: "I know the current state of the law, but I do object to using rap sheets for the Court's consideration in the trial." The court overruled the motion. The court later stated: "As far as the rap sheet, which is [exhibit] No. 22, I'm only going to consider those entries that relate to these two charges that are in

30

issue in front of the Court, the burglary and the robbery.
I've had a chance to review the documents." At that point,
the court asked for argument. Defense counsel submitted
and the court found the prior conviction allegation true.

As defendant acknowledges, a CLETS record is admissible to
prove a prior conviction. (See *People v. Martinez* (2000)
22 Cal.4th 106, 116; *People v. Dunlap* (1993) 18
Cal.App.4th 1468, 1471-1481 .) " '[Evidence Code]
[s]ection 1280 ... permits the court to admit an official
record or report without necessarily requiring a witness
to testify as to its identity and mode of preparation if
the court takes judicial notice or if sufficient
independent evidence shows that the record or report was
prepared in such a manner as to assure its
trustworthiness.' [Citations.]" (*People v. Dunlap, supra*,
at p. 1477.) "A trial court has broad discretion in
determining whether a party has established these
foundational requirements [under Evidence Code section
1280]. [Citation.] Its ruling on admissibility 'implies
whatever finding of fact is prerequisite thereto; a
separate or formal finding is, with exceptions not
applicable here, unnecessary. [Citation.]' [Citation.] A
reviewing court may overturn the trial court's exercise of
discretion ' "only upon a clear showing of abuse." '
[Citations.]" (*People v. Martinez, supra*, at p. 120;
*People v. Dunlap, supra*, at p. 1479 [whether
trustworthiness requirement has been met is a matter
within the trial court's discretion]; *People v. Beeler*
(1995) 9 Cal.4th 953, 978-979 [trial court's finding that
a document is trustworthy can be overturned only upon a
clear showing of abuse].)

Defendant contends that the rap sheet was unreliable
because it contains an error regarding a different prior
conviction. Defendant failed to object to the evidence as
unreliable and therefore has forfeited the claim.
(Evid.Code, § 353.) Furthermore, the trial court cannot
abuse its discretion by failing to consider information or
objections not presented to it. (See *People v. Box* (2000)
23 Cal.4th 1153, 1195 [trial court's ruling on motion
is reviewed for abuse of discretion on the basis of facts
known to the court at the time of ruling].) In addition,
we note that even if there was an error in the rap sheet,
defendant has made no argument that the rap sheet was
inaccurate with regard to the prior conviction in question
or that he did not suffer that conviction.

> As for the sufficiency of the evidence, to establish a
> prior conviction, the prosecutor must prove "the defendant
> was convicted and the conviction was of an offense within
> the definition of the particular statute invoked...."
> (*People v. Henley* (1999) 72 Cal.App.4th 555, 562.) "The
> state has the burden 'to prove beyond a reasonable doubt
> those alleged prior convictions challenged by a
> defendant.' [Citation.] In reviewing the sufficiency of
> the evidence of the prior convictions, we determine ' "...
> whether a reasonable trier of fact could have found that
> the prosecution sustained its burden of proof beyond a
> reasonable doubt. In making this determination, [we] must
> consider the evidence in a light most favorable to the
> judgment and presume the existence of every fact the trier
> could reasonably deduce from the evidence in support of
> the judgment. The test is whether substantial evidence
> supports the [trier's conclusion], not whether the
> evidence proves guilt beyond a reasonable doubt." '
> [Citations.]" (*People v. Jones* (1995) 37 Cal.App.4th 1312,
> 1315; see *People v. Tenner* (1993) 6 Cal.4th 559, 566-567.)
>
> Although the prosecution could have offered other or
> additional evidence to prove defendant's prior conviction,
> the certified CLETS rap sheet alone was sufficient and
> defendant offers no authority to the contrary.

(Doc. 21-1, 12-14.)

    B.  <u>Analysis</u>

    Respondent argues that Petitioner's insufficiency of the

evidence claim is procedurally barred.  Respondent raises not only

Petitioner's procedural default in failing to object to the

reliability of the report, but also Petitioner's asserted failure to

exhaust his claim in the state courts due to failure to identify the

claim as a federal claim.

    The doctrine of procedural default is a specific application of

the more general doctrine of independent state grounds.  It provides

32

that when state court decision on a claim rests on a prisoner's violation of either a state procedural rule that bars adjudication of the case on the merits or a state substantive rule that is dispositive of the case, and the state law ground is independent of the federal question and adequate to support the judgment such that direct review in the United States Supreme Court would be barred, the prisoner may not raise the claim in federal habeas absent a showing of cause and prejudice or that a failure to consider the claim will result in a fundamental miscarriage of justice. Walker v. Martin, - U.S. -, 131 S.Ct. 1120, 1127 (2011); Coleman v. Thompson, 501 U.S. 722, 729-30 (1991); Bennett v. Mueller, 322 F.3d 573, 580 (9th Cir. 2003); Wells v. Maass, 28 F.3d 1005, 1008 (9th Cir. 1994). The doctrine applies regardless of whether the default occurred at trial, on appeal, or on state collateral review. Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

Where a state court discusses a state procedural bar as a separate basis for its decision, but in an alternative holding, discusses the merits of the federal claim, the court has clearly and expressly stated its reliance on a procedural ground, and the procedural bar applies. Bennett v. Mueller, 322 F.3d at 580; Carriger v. Lewis, 971 F.2d 329, 333 (9th Cir. 1992) (citing Coleman v. Thompson, 501 U.S. 722 and Harris v. Reed, 489 U.S. at 264 n.10). However, a federal court can bypass a procedural bar issue in the interests of judicial economy and where otherwise barred claims are

clearly not meritorious.  <u>Franklin v. Johnson</u>, 290 F.3d 1223, 1232

(9th Cir. 2002); <u>see</u>, <u>Lambrix v. Singletary</u>, 520 U.S. 518, 525

(1997).  Likewise, as Respondent states, a court may reach the

merits of a claim even in the absence of exhaustion where it is

clear that the claim is not colorable.  28 U.S.C. § 2254(b)(2) ("An

application for a writ of habeas corpus may be denied on the merits,

notwithstanding the failure of the applicant to exhaust the remedies

available in the courts of the State"); <u>Granberry v. Greer</u>, 481 U.S.

129, 134-35 (1987); <u>Cassett v. Stewart</u>, 406 F.3d 614, 624 (9th Cir.

2005).  Here, the merits of the claim were addressed by the state

court and it would be expeditious to consider the claim on the

merits.

To determine whether a conviction violates the constitutional

guarantees of due process of law because of insufficient evidence, a

federal court ruling on a petition for writ of habeas corpus must

determine whether any rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt.  <u>Jackson</u>

<u>v. Virginia</u>, 443 U.S. 307, 319, 20-21 (1979); <u>Windham v. Merkle</u>, 163

F.3d 1092, 1101 (9th Cir. 1998); <u>Jones v. Wood</u>, 114 F.3d 1002, 1008

(9th Cir. 1997).

All evidence must be considered in the light most favorable to

the prosecution.  <u>Jackson</u>, 443 U.S. at 319; <u>Jones</u>, 114 F.3d at 1008.

It is the trier of fact's responsibility to resolve conflicting

testimony, weigh evidence, and draw reasonable inferences from the

facts; thus, it must be assumed that the trier resolved all conflicts in a manner that supports the verdict.  Jackson v. Virginia, 443 U.S. at 319; Jones, 114 F.3d at 1008.  The relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but rather whether the jury could reasonably arrive at its verdict.  United States v. Mares, 940 F.2d 455, 458 (9th Cir. 1991). Circumstantial evidence and the inferences reasonably drawn therefrom can be sufficient to prove any fact and to sustain a conviction, although mere suspicion or speculation does not rise to the level of sufficient evidence.  United States v. Lennick, 18 F.3d 814, 820 (9th Cir. 1994); United States v. Stauffer, 922 F.2d 508, 514 (9th Cir. 1990); see, Jones v. Wood, 207 F.3d at 563.  The court must base its determination of the sufficiency of the evidence on a review of the record.  Jackson at 324.

The Jackson standard must be applied with reference to the substantive elements of the criminal offense as defined by state law.  Jackson, 443 U.S. at 324 n.16; Windham, 163 F.3d at 1101. However, the minimum amount of evidence that the Due Process Clause requires to prove an offense is purely a matter of federal law. Coleman v. Johnson, - U.S. -, 132 S.Ct. 2060, 2064 (2012) (per curiam).  For example, under Jackson, juries have broad discretion to decide what inferences to draw and are required only to draw reasonable inferences from basic facts to ultimate facts.  Id.

Further, under the AEDPA, federal courts must apply the standards of Jackson with an additional layer of deference.  Coleman v. Johnson, 132 S.Ct.at 2062; Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005).  This Court thus asks whether the state court decision being reviewed reflected an objectively unreasonable application of the Jackson standards to the facts of the case. Coleman v. Johnson, 132 S.Ct. at 2062; Juan H. v. Allen, 408 F.3d at 1275.  The determination of the state court of last review on a question of the sufficiency of the evidence is entitled to considerable deference under 28 U.S.C. § 2254(d).  Coleman v. Johnson, 132 S.Ct. at 2065.

Here, the state court concluded that the CLETS rap sheet was admissible under state law.  This finding binds this Court in this proceeding pursuant to 28 U.S.C. § 2254.  A state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas corpus.  Bradshaw v. Richey, 546 U.S. 74, 76 (2005) (per curiam); Menendez v. Terhune, 422 F.3d 1012, 1029 (9th Cir. 2005).

Here, the state court articulated the proper legal standard regarding sufficiency of the evidence.  It appears that there was an error in the rap sheet with respect to another prior conviction.  Thus, a rational trier of fact may have concluded that the rap sheet did not establish that Petitioner suffered the prior conviction.  However, the evidence must be considered in the light most favorable

36

to the prosecution.  As the state court noted, there was no showing that Petitioner had not suffered the robbery conviction or that the document was erroneous with respect to the robbery conviction.  A rational trier of fact could have found that Petitioner suffered the prior robbery conviction beyond a reasonable doubt.

Therefore, the state court's conclusion that Petitioner's robbery conviction had been established by sufficient evidence was an objectively reasonable application of the Jackson standard. Petitioner has not shown that the state court's decision was contrary to, or an unreasonable application of, clearly established federal law within the meaning of § 2254(d)(1).  Accordingly, it will be recommended that Petitioner's claim concerning the sufficiency of the evidence to support the finding that Petitioner suffered the prior robbery conviction be denied.

IX.   Sixth Amendment Violation at Sentencing

Petitioner argues that his sentence to an upper term based on his numerous prior convictions, unsatisfactory performance on probation and parole, and repeated choices of vulnerable victims violated his Sixth and Fourteenth Amendment right to a jury trial as set forth in Cunningham v. California, 549 U.S. 270 (2007) because he was sentenced to an upper term based on facts not found true by a jury.  Petitioner contends that he committed his offense in 2006, whereas California's determinate sentencing law was not amended until after Petitioner's offense to make imposition of the upper

37

term discretionary with the sentencing court and permissible without a factual finding of an aggravating factor.  (Pet., doc. 1, 7, 46-48.)  Petitioner challenges the retroactive application.

>    A.   The State Court's Decision

The pertinent portion of the decision of the CCA on this issue was as follows:

> **V. Upper Term**
>
> Defendant contends the trial court's imposition of the upper term violated the ex post facto clause of the Fourteenth Amendment and *Cunningham v. California* (2007) 549 U.S. 270. He acknowledges that his arguments were rejected by *People v. Sandoval* (2007) 41 Cal.4th 825 and *People v. Black* (2007) 41 Cal.4th 799, and that we are bound by those decisions (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455), but he raises the issue to preserve it for federal review.

(Doc. 21-1, 14.)

>    B.   Analysis

A criminal defendant is protected against the retroactive application of a judicial construction of a criminal statute that is unexpected and indefensible by reference to the law which has been expressed prior to the pertinent criminal conduct.  <u>Bouie v. City of Columbia</u>, 378 U.S. 347, 350-54 (1964).  In <u>Bouie</u>, a state court had construed a statute, the terms of which prohibited entering on another's land with notice that entry was prohibited, to include remaining on the land after a request to depart.  The Supreme Court condemned the state court's construction because it offended the demand of the Due Process Clause that a criminal statute give fair

38

warning of the conduct that it makes criminal such that a person of ordinary intelligence is given fair notice that his or her contemplated conduct is forbidden by the statute.  Id. at 352-53. A criminal statute may not either forbid or require the commission of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application. Id.  The Court also reasoned that because judicial construction of a criminal statute is generally not revealed until the decision of a state court is rendered, the construction is applied after a defendant engages in the conduct sought to be punished as criminal; thus, judicial construction operates analogously with an ex post facto law because it criminalizes an otherwise innocent action done before the construction or increases punishment for such conduct.

Here, the challenged judicial construction pertains to modifications of the procedures used by California's sentencing courts.  In the year following the commission of Petitioner's offense, the Supreme Court held in Cunningham v. California, 549 U.S. 270, 288-94 (2007), that a defendant's rights to trial by jury and proof beyond a reasonable doubt under the Sixth and Fourteenth Amendments were violated by California's determinate sentencing law (DSL), which authorized the sentencing judge, as distinct from the jury, to find facts other than the fact of a prior conviction that would expose a defendant to an upper term instead of the presumptively applicable middle term, which the Court considered to

39

be the statutory maximum.  California's DSL thus ran afoul of the requirement of <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 490 (2000), that any fact other than a prior conviction that is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by a defendant or proved to a jury beyond a reasonable doubt.

Subsequently, the California legislature amended the DSL to allow a sentencing court, in its discretion, without the need for any finding of fact, to impose a lower, middle, or upper term as the court determines best serves the interests of justice.  <u>See</u>, Cal. Pen. Code § 1170(b), Cal. Stats. 2007, ch. 3.

In <u>People v. Sandoval</u>, 41 Cal.4th 825, 843-44 (2007), the California Supreme Court decided that a revised sentencing process consistent with the state legislature's 2007 amendments of the DSL could be applied to defendants who committed their crimes before the effective date of the DSL amendments.  The court determined that the remedy for any Sixth and Fourteenth Amendment error under <u>Cunningham v. California</u> was remand for the trial court to exercise broad discretion to impose the lower, middle, or upper term consistent with the post-<u>Cunningham</u> amendments of the DSL.  The court thus judicially reformed the sentencing law.  <u>Id.</u>  The court noted that judicial modification of a sentencing procedure was governed by due process concepts of notice, foreseeability, and the right to fair warning, and it considered whether sentencing someone whose crime

40

predated the amendment would violate a defendant' right to

protection against ex post facto judicial constructions embodied in

due process of law.  The court concluded that there was no violation

based on the absence of any indication of a likelihood of an

increase in sentence length or an expansion of judicial discretion

-- particularly in a case where the offender had initially been

sentenced to the upper term.  People v. Sandoval, 41 Cal.4th at 853-

56.  The court concluded that defendants were put on notice that

they could receive the upper term by the original version of the

sentencing statutes, and thus they did not suffer a denial of due

process.  People v. Sandoval, 41 Cal.4th at 856-58.

In Chioino v. Kernan, 581 F.3d 1182, 1185-86 (9th Cir. 2009),

where a defendant's state sentence was imposed in violation of the

Sixth and Fourteenth Amendments because of judicial fact finding,

the remedy of remanding the case for resentencing under the Sandoval

procedure did not raise any ex post facto concerns.  In Butler v.

Curry, 528 F.3d 624, 652 n.20 (9th Cir. 2008), the court considered

whether applying California's judicially reformed sentencing law to

one who committed his crime before the judicial modification

occurred violated the ex post facto principles contained in the Due

Process Clause of the Fourteenth Amendment.  The Ninth Circuit

determined that the question was controlled by United States v.

Dupas, 419 F.3d 916, 921 (9th Cir. 2005), in which the court decided

that retroactive application of the analogous remedial decision in

41

United States v. Booker, 543 U.S. 220 (2005) did not violate the ex post facto principles of fair warning incorporated in the Due Process Clause because there had been fair notice as to the potential sentence.[2]

   If application of Sandoval's judicially created rule of discretionary sentencing to defendants whose crimes predated the judicial construction does not violate ex post facto principles embodied in the Due Process Clause, then application of the same rule enacted by the state legislature would not violate those principles.  The Court concludes that Chioino forecloses Petitioner's due process claims concerning retroactive application. Thus, the state court's decision in the present case was not contrary to, or an unreasonable application of, clearly established federal law within the meaning of 28 U.S.C. § 2254(d)(1). Accordingly, it will be recommended that Petitioner's claim concerning the retroactive application of amended sentencing procedures be denied.

   In sum, Petitioner has failed to show that the state court's decision on any of his claims was contrary to, or an unreasonable application of, clearly established federal law within the meaning

---

[2] In United States v. Booker, the Court held that because of unauthorized judicial fact finding in the sentencing process, the mandatory federal sentencing guidelines violated the Sixth Amendment.  The Court construed the Federal Sentencing Act to render the guidelines discretionary.  The Court then directed that the Court's interpretation apply to "all cases on direct review."  United States v. Booker, 543 U.S. at 268.

of § 2254(d)(1). Therefore, it will be recommended that the petition for writ of habeas corpus be denied.

X.  Evidence for Evidentiary Hearing

Petitioner asks this this Court to consider a letter from the victim of the charged offenses in connection with an evidentiary hearing in this Court. (Trav., doc. 27, 3; pet., doc. 1, 19-22.)

The decision to grant an evidentiary hearing is generally a matter left to the sound discretion of the district courts. 28 U.S.C. § 2254; Habeas Rule 8(a); Schriro v. Landrigan, 550 U.S. 465, 473 (2007). To obtain an evidentiary hearing in federal court under the AEDPA, a petitioner must allege a colorable claim by alleging disputed facts which, if proved, would entitle him to relief. Schriro v. Landrigan, 550 U.S. at 474.

The determination of entitlement to relief is, in turn, is limited by 28 U.S.C. § 2254(d)(1), which requires that to obtain relief with respect to a claim adjudicated on the merits in state court, the adjudication must result in a decision that was either contrary to, or an unreasonable application of, clearly established federal law. Schriro v. Landrigan, 550 U.S. at 474. In analyzing a claim pursuant to § 2254(d)(1), a federal court is limited to the record before the state court that adjudicated the claim on the merits. Cullen v. Pinholster, 131 S.Ct. at 1398.

Thus, when a state court record precludes habeas relief under the limitations set forth in § 2254(d), a district court is not

43

required to hold an evidentiary hearing.  <u>Cullen v. Pinholster</u>, 131 S.Ct. at 1399 (citing <u>Schriro v. Landrigan</u>, 550 U.S. at 474).  An evidentiary hearing may be granted with respect to a claim adjudicated on the merits in state court where the petitioner satisfies § 2254(d)(1), or where § 2254(d)(1) does not apply, such as where the claim was not adjudicated on the merits in state court. <u>Cullen v. Pinholster</u>, 131 S.Ct. at 1398, 1400-01.

Here, Petitioner has not shown that the state court decision on his claims was contrary to, or an unreasonable application of clearly established federal law within the meaning of 28 U.S.C. § 2254(d)(1).  Thus, this Court will not grant an evidentiary hearing.

Further, reference to the petition for review filed in the California Supreme Court (LD 7) shows that the letter from the victim, which was dated January 25, 2009, was not presented to the CSC for review.  Accordingly, in the course of its review of petition, the Court has not considered the letter from the victim.

XI.  <u>Certificate of Appealability</u>

Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the Court of Appeals from the final order in a habeas proceeding in which the detention complained of arises out of process issued by a state court.  28 U.S.C. § 2253(c)(1)(A); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003).  A certificate of appealability may issue only if the

applicant makes a substantial showing of the denial of a

constitutional right.  § 2253(c)(2).  Under this standard, a

petitioner must show that reasonable jurists could debate whether

the petition should have been resolved in a different manner or that

the issues presented were adequate to deserve encouragement to

proceed further.  Miller-El v. Cockrell, 537 U.S. at 336 (quoting

Slack v. McDaniel, 529 U.S. 473, 484 (2000)).  A certificate should

issue if the Petitioner shows that jurists of reason would find it

debatable whether: (1) the petition states a valid claim of the

denial of a constitutional right, or (2) the district court was

correct in any procedural ruling.  Slack v. McDaniel, 529 U.S. 473,

483-84 (2000).

        In determining this issue, a court conducts an overview of the

claims in the habeas petition, generally assesses their merits, and

determines whether the resolution was debatable among jurists of

reason or wrong.  Id.  An applicant must show more than an absence

of frivolity or the existence of mere good faith; however, an

applicant need not show the appeal will succeed.  Miller-El v.

Cockrell, 537 U.S. at 338.  A district court must issue or deny a

certificate of appealability when it enters a final order adverse to

the applicant.  Rule 11(a) of the Rules Governing Section 2254

Cases.

        Here, it does not appear that reasonable jurists could debate

whether the petition should have been resolved in a different

manner.   Thus, Petitioner has not made a substantial showing of the denial of a constitutional right.   Accordingly, it will be recommended that the Court decline to issue a certificate of appealability.

XII.   Recommendations

In accordance with the foregoing analysis, it is RECOMMENDED that:

1)   The petition for writ of habeas corpus be DENIED; and

2)   Judgment be ENTERED for Respondent; and

3)   The Court DECLINE to issue a certificate of appealability.

These findings and recommendations are submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.   Within thirty (30) days after being served with a copy, any party may file written objections with the Court and serve a copy on all parties.   Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."   Replies to the objections shall be served and filed within fourteen (14) days (plus three (3) days if served by mail) after service of the objections.   The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).   The parties are advised that failure to file objections within the

///

46

specified time may waive the right to appeal the District Court's

order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

    Dated:   **August 8, 2013**                       **/s/ Sheila K. Oberto**

                                        UNITED STATES MAGISTRATE JUDGE